IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEANINNE C.,

                              Plaintiff,

              v.                                         Civil Action No.
                                                         3:19-CV-1176 (DEP)

ANDREW M. SAUL, Commissioner of Social
Security,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
Attorneys at Law
1500 East Main Street
Endicott, NY 13761

FOR DEFENDANT

HON. ANTOINETTE L. BACON          LISA SMOLLER, ESQ.
Acting United States Attorney     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on December 16, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Plaintiff's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is VACATED.

3)   The matter is hereby REMANDED to the Commissioner,

without a directed finding of disability, for further proceedings consistent

with this determination.

4)   The clerk is respectfully directed to enter judgment, based

upon this determination, remanding the matter to the Commissioner

pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:      December 18, 2020
            Syracuse, NY

3

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
JEANINNE C.,

                         Plaintiff,

vs.                              3:19-CV-1176

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,


                         Defendant.
-------------------------------------------x
```

        Transcript of a **Decision** held during a

Telephone Conference on December 16, 2020, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.

                 A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:        LACHMAN & GORTON
                      Attorneys at Law
                      1500 East Main St.
                      P.O. Box 89
                      Endicott, New York  13761-0089
                        BY:  PETER A. GORTON, ESQ.


For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of General Counsel
                      J.F.K. Federal Building
                      Room 625
                      Boston, Massachusetts  02203
                        BY:  LISA SMOLLER, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
           *Official United States Court Reporter*
                 *100 South Clinton Street*
               *Syracuse, New York  13261-7367*
                     *(315) 234-8547*

1          (The Court and all counsel present by

2          telephone.)

3          THE COURT:  Thank you.  Let me begin by thanking

4    both counsel for excellent presentations.  I enjoyed working

5    with you and found this to be an interesting case as usual.

6          The plaintiff has commenced this proceeding

7    pursuant to 42 United States Code Sections 405(g) and

8    1383(c)(3) to challenge an adverse determination by the

9    Commissioner of Social Security finding that she was not

10   disabled at the relevant times and therefore ineligible for

11   the benefits sought.  And Counsel, will you make sure that

12   you muted your phones, we're getting a little feedback.

13         The background is as follows:  Plaintiff was born

14   in January of 1961 and is currently 59 years of age.

15   Plaintiff was 53 years old at the alleged onset of her

16   disability in August of 2014.  Plaintiff stands 5 foot,

17   between 4 and 6 inches, depending upon the reference in the

18   record, in height, she weighs 120 to 125 pounds.  Plaintiff

19   lives in Binghamton, New York with her disabled husband.  On

20   occasion a stepson, who has been in and out of jail, lives

21   with them at some point and has been a cause of considerable

22   stress for the plaintiff according to her treatment records.

23   Plaintiff has a 12th grade education and was in regular

24   classes while in school.  Plaintiff is right-handed.

25   Plaintiff drives occasionally.  She does not use public

1  transportation as it apparently is not available to her.

2  Plaintiff has worked as a floral designer and a

3  nursery laborer in two different positions and she worked in

4  one or both of those positions between 1999 and 2014.  She

5  was laid off on August 8, 2014 according to page 171 of the

6  administrative transcript.

7  Physically, plaintiff suffers from lupus and

8  specifically discoid, I will spell this and not pronounce it,

9  erythematosus, discoid lupus erythematosus, or DLE for short.

10  She also suffers from skin lesions that are related to the

11  lupus apparently.  They're referred to as neurotic

12  excoriations.  She experiences low back pain and degenerative

13  disk changes and right shoulder pain.

14  Mentally, plaintiff suffers from considerable

15  anxiety and depression.  She has a bedbug phobia, she has a

16  phobia about her neurotic excoriations.  She did not undergo

17  any psychiatric hospitalization for her mental conditions.

18  Plaintiff's primary care provider is FNP Ashley

19  Dudden who she has seen for five years.  She has also seen a

20  rheumatologist, Dr. Paul Dura, on one occasion, June 14,

21  2017, reference is at page 516, and the statement was made,

22  "I need a rheumatologist because I am applying for

23  disability."  She also has seen Physician's Assistant Aspen

24  D'Angelo on January 15, 2018 and February 23, 2018.

25  Plaintiff counsels biweekly with Licensed Clinical Social

1   Worker, LCSW, Virginia Wetherbee who works with Catholic

2   Charities.  Plaintiff has counseled with Therapist Wetherbee

3   for five years.

4          Plaintiff has been provided or prescribed various

5   medications including Celebrex, tizanidine as needed for

6   sleep, citalopram, alprazolam, hydroxyzine, buspirone for

7   anger, Xanax, mupirocin ointment and various allergy

8   medications, and ibuprofen.

9          Plaintiff has a fairly significant range of

10  activities of daily living according to her hearing testimony

11  and pages 484 and 490 of the administrative transcript.

12  Plaintiff is able to dress.  She showers twice weekly, she

13  can cook, vacuum, sweep, mop, do laundry, do yardwork,

14  garden, watch television, walk dogs, occasionally baby-sit

15  for grandchildren who were 11 months and two years of age at

16  the time of the hearing in this matter.  She reads, crochets,

17  socializes, and shops, although only at night because of her

18  concern over her excoriations.  Plaintiff smokes and has

19  since 18, approximately one-half pack of cigarettes per day.

20  The record is equivocal as to whether she continues to use

21  marijuana.  At one point she was using marijuana

22  approximately one time per month, according to page 483,

23  report to Dr. Slowik, but at 490, it's indicated that she

24  quit smoking marijuana in 1998, and at page 188, she claimed

25  to have stopped using marijuana five years ago.

1        Procedurally, plaintiff applied for Title II and

2   Title XVI benefits protectively under the Social Security Act

3   on July 14, 2015 alleging an onset date of August 8, 2014,

4   claiming disability based upon lupus, open sores all over her

5   body, and depression.  A hearing was conducted on April 11,

6   2018 to address plaintiff's claim for benefits by

7   Administrative Law Judge Elizabeth Koennecke.  Hopefully I

8   pronounced that right, with Mr. Gorton's assistance.

9        MR. GORTON:  You did, Judge.  I had to take it off

10  mute to tell you that you did.

11       THE COURT:  Well, and for Ms. Smoller's benefit,

12  Mr. Gorton corrected me on a prior occasion, politely, on the

13  pronunciation.

14       On August 20, 2018, a supplemental hearing was

15  conducted by the administrative law judge with a vocational

16  expert testifying on that occasion.  On September 21, 2018,

17  ALJ Koennecke issued a decision unfavorable to the plaintiff.

18  That became a final determination of the agency on August 12,

19  2019, when the Social Security Administration Appeals Council

20  denied plaintiff's request for review.  This action was

21  commenced on September 23, 2019, and is timely.

22       In her decision, ALJ Koennecke applied the familiar

23  five-step sequential test for determining disability.

24       At step one, she determined that plaintiff had not

25  engaged in substantial gainful activity since August 8, 2014.

1    She did note prior to that that plaintiff was insured through

2    December 31, 2018.

3            At step two, the ALJ concluded that plaintiff does

4    suffer from severe impairments that impose more than minimal

5    limitation on her ability to perform work functions,

6    including lupus and all mental impairments as variously

7    characterized (including an affective disorder, unspecified

8    depressive disorder).

9            At step three, the ALJ concluded that plaintiff's

10   conditions do not meet or medically equal any of the listed

11   presumptively disabling conditions set forth in the

12   Commissioner's regulations, specifically considering Listing

13   14.02 related to lupus, as well as 12.04 and 12.06 related to

14   her mental impairments.

15           After surveying the record evidence, ALJ Koennecke

16   concluded that plaintiff retains the residual functional

17   capacity to perform medium work with limitations that are

18   both physical and nonexertional in nature.

19           At step four, ALJ Koennecke concluded that

20   plaintiff cannot perform her past relevant work as a floral

21   arranger/designer.

22           At step five, she first noted that if plaintiff was

23   capable of performing a full range of medium work, a finding

24   of no disability would be directed by the Medical-Vocational

25   Guidelines set forth in the regulations, and specifically

1   Grid Rule 203.22.  With the assistance of a vocational expert

2   and a hypothetical that included the exertional and

3   nonexertional limitations of the residual functional capacity

4   finding, the administrative law judge concluded that

5   plaintiff is capable, notwithstanding her impairments, of

6   performing work available in the national economy as an

7   industrial cleaner, a hospital food service worker, and an

8   order caller, therefore, was not disabled at the relevant

9   times.

10          The court's function, as you know, is to determine

11  whether correct legal principles were applied and the

12  resulting determination is supported by substantial evidence.

13  The test which the court applies is extremely deferential.

14  To overcome the substantial evidence test, as the Second

15  Circuit noted in *Brault v. Social Security Administration*

16  *Commissioner*, 683 F.3d 443 from 2012, the plaintiff must meet

17  a standard which is even more rigid and exacting than the

18  clearly erroneous standard which we're familiar with.

19  Substantial evidence, of course, is defined as such relevant

20  evidence as a reasonable mind might accept as adequate to

21  support a conclusion.  The Second Circuit noted

22  parenthetically in *Brault* that under this standard, once an

23  ALJ has found a fact, that fact can be rejected only if a

24  reasonable fact finder would have to conclude otherwise.

25          In this case, the focus of plaintiff's challenge is

1    on her ability to maintain a schedule and stay on task.

2    There's no claim directly emanating from plaintiff's lupus,

3    except to the extent that it exacerbates her psychological

4    issues, including with respect to the excoriations, the

5    neurotic excoriations which she experiences and the effect of

6    those on her psychological question -- status.

7            So plaintiff specifically argues that the finding

8    that plaintiff can meet attendance and stress requirements of

9    work on a continuing basis is not supported.  As a subset,

10   the plaintiff challenges the rejection of undisputed medical

11   opinions concerning her ability to maintain a schedule and

12   attendance.  She challenges the weighing of medical opinions

13   and claims that the administrative law judge substituted her

14   lay opinion for medical opinions, and that the administrative

15   law judge placed undue reliance on the agency psychologist's

16   opinions.  The sum total of these, plaintiff argues, infected

17   the step five determination at which the plaintiff of

18   course -- the Commissioner, I'm sorry, bears the burden of

19   proof.

20           The first task of course of the administrative law

21   judge is to determine plaintiff's residual functional

22   capacity, which represents the range of work that the

23   plaintiff is capable of performing, notwithstanding her

24   limitations.  In this case, she was found to be capable of

25   performing medium work which is defined under 20 C.F.R.

1    Section 404.1567 as involving lifting no more than 50 pounds

2    at a time with frequent lifting or carrying of objects

3    weighing up to 25 pounds.  The regulation goes on to state

4    that if someone can do medium work, would determine that he

5    or she can do sedentary and light work.

6         The part -- of course the residual functional

7    capacity, like all other determinations made by the

8    administrative law judge, must be supported by substantial

9    evidence.  The crux of this case really stems from the

10   statement included in the residual functional capacity

11   finding on page 15 of the administrative transcript that

12   plaintiff is capable of regularly attending to a routine and

13   maintaining a schedule.  Plaintiff of course, as I indicated,

14   challenges that determination.

15        There are many -- or several, I should say, medical

16   opinions in the record.  This case is governed by the

17   regulations that were in effect at the time this application

18   was filed, prior to March of 2017.  The method or means of

19   weighing medical opinions both of acceptable medical sources

20   that are treating sources and others is governed by 20 C.F.R.

21   Section 404.1527(c).  The importance of considering the

22   factors that are laid out in that regulation has been

23   stressed on many occasions by the Second Circuit Court of

24   Appeals, most recently in *Drake v. Saul*, two to one which was

25   interesting because I hadn't seen a dissent in a summary

1    order, but that was a case that was handed down earlier

2    this -- last week, I guess, and it's found at 2020 WL

3    7294561, a case that I know Mr. Gorton's familiar with.

4           In this case, the medical opinions are several, and

5    let me go through them briefly.  As we have discussed, the

6    agency nonexamining psychologist, A. Chapman, rendered a

7    decision -- rendered an opinion on November 18, 2015.  It was

8    given great weight by ALJ Koennecke at page 20.  The opinion

9    appears at Exhibit 1A through 2A and 192 to 209.  It

10   indicates in the worksheet that plaintiff has a moderate

11   limitation in the ability to perform activities within a

12   schedule and to maintain regular attendance, that's page 197.

13   In the mental residual functional capacity finding at

14   page 198, however, Dr. Chapman notes that based on evidence

15   in file, claimant retains capacity to perform the four basic

16   demands of unskilled work on a sustained basis.

17   Significantly, as we discussed, if he is unclear what records

18   Dr. Chapman had available, there is a statement that

19   plaintiff -- to the effect on page 198 that plaintiff is in

20   current treatment but no records obtained.  Obviously none of

21   the treatment records that postdate November 18, 2015 could

22   have been reviewed by Dr. Chapman.  It's unclear whether

23   Dr. Chapman had any records from Therapist Wetherbee.  On

24   page 194 it appears that Catholic Charities records were

25   requested on two occasions, but there isn't any indication of

1    them having been received.

2         The second opinion in the record is from a

3    consultative examiner, Dr. Amanda Slowik.  It appears at

4    page 482 to 487 of the administrative transcript.  The

5    opinion was discussed by ALJ Koennecke and given partial

6    weight at pages 19 and 20 of her decision.  Significantly,

7    Dr. Slowik indicates that plaintiff's ability to maintain a

8    regular schedule and appropriately deal with stress is

9    moderately to markedly limited.  The administrative law

10   judge, in discussing that, rejected it, stating that the

11   limitation is not well supported by the clinical evidence

12   showing that the claimant generally presents as alert and

13   with appropriate mood and affect.

14        The third opinion, medical opinion, comes from FNP

15   Ashley Dudden, the treatment provider, general treatment

16   provider for the plaintiff, and FNP Dudden issued an opinion

17   on 606 through 60 -- I'm sorry, 605 to 606.  It is dated

18   March 16, 2018.  She opines that plaintiff would be off task

19   10 percent or less, but that she would be absent two to three

20   days per month.  That's at page 606.  The opinion is given

21   little weight at page 18 of the administrative transcript.

22   The nurse practitioner was asked to update the opinions and

23   she rendered a second opinion on June 29, 2018.  It appears

24   at 703, 705, indicates that plaintiff's condition is about

25   the same as it was in March, indicates that she would be off

1    task 10 percent or less but she would experience fatigue and

2    again opined that she would be absent two to three days per

3    month.

4            The next opinion comes from Therapist Wetherbee on

5    March 15, 2018.  It appears at 630 to 631 of the

6    administrative transcript.  It was given partial weight by

7    ALJ Koennecke at 18 to 19.  It indicates that plaintiff has a

8    marked limitation in maintaining regular attendance without

9    interruptions from psychological-based symptoms and markedly

10   limited in performing activities within a schedule, being

11   punctual and performing at a consistent pace.  And it also

12   indicates that she would be absent three or more days per

13   month.  There is explanation given on page 2 saying that it

14   is not the prototypical check-the-box form that contains no

15   explanation whatsoever.  Therapist Wetherbee on June 25, 2018

16   stated at page 667 that plaintiff's condition had worsened

17   between March and June and that -- explained that Jeaninne's

18   depression has worsened partly due to increased stress,

19   tension, and financial burdens in her household related to

20   her troubled, disrespectful stepson recently released from

21   jail, living with her and her husband.  Jeaninne feels

22   powerless over the situation and not able to have control of

23   her own household and environment, continues -- contributes

24   to increased physical symptoms also.  And there are attached

25   to that some treatment records from Therapist Wetherbee.

1          Physician's Assistant D'Angelo issued an opinion on

2     March 16, 2018.  The focus appears to be on the discoid lupus

3     and lumbar degenerative disk disease/low back pain.  It

4     appears at 634 to 635.  At page 19 it was given great weight.

5     It indicates that plaintiff would be off task 10 percent or

6     less and that there would not be any good or bad days.  There

7     was no opinion given concerning absenteeism.

8          And lastly, Dr. Gilbert Jenouri issued an opinion

9     after conducting an internal medicine examination of the

10    plaintiff that appears at 489 to 492.  That was given great

11    weight at page 19 by Administrative Law Judge Koennecke.  It

12    indicated in the medical source conclusion that plaintiff

13    experiences minimal restriction in walking, standing, sitting

14    long periods, bending, stair climbing, lifting, and carrying.

15    No mention of getting off task or absent, nor is there any

16    indication that he was asked to give opinions on that issue.

17         The threshold opinion, or issue really is

18    absenteeism and off task.  The vocational expert made it

19    clear that more than one unexcused or unexpected absence per

20    month would render the plaintiff unemployable.  One of the

21    things that the administrative law judge did in rejecting

22    areas of the opinions concerning absenteeism is to rely on

23    activities of daily living.  And this is the type of case

24    where the activities of daily living don't necessarily

25    translate well into the ability to perform work on a

1    sustained basis five days a week, eight hours a day, and the

2    administrative law judge really didn't explain how that is

3    inconsistent with plaintiff's fear of going out in public

4    because of her excoriations and her fear of bedbugs and so

5    forth.

6         And so I agree with the plaintiff that in this

7    case, the activities of daily living really don't bear much

8    relationship to the mental demands of regular work and I

9    agree that this case, that on that issue, is informed by such

10   decisions as *Coyle v. Commissioner of Social Security*, 2018

11   WL 3559073 from the Northern District of New York, July 24,

12   2018, and *McGregor v. Astrue*, 993 F.Supp.2d 130 from

13   July 2012, again the Northern District of New York, although

14   I agree that consideration of activities of daily living is

15   certainly a factor.

16        When you apply the 1527(c) factors to the various

17   opinions that address specifically absenteeism, you find, for

18   example, that Dr. Slowik found a moderate to marked

19   limitation in the ability to maintain a regular schedule

20   which is clearly inconsistent with the statement in the

21   residual functional capacity finding that plaintiff is able

22   to regularly attend to routine and maintain a schedule, it's

23   not supported.  The plaintiff was examined by Dr. Slowik, she

24   explained her conclusions.  Her conclusions are consistent

25   with exam findings, they're consistent with plaintiff's

1    treatment notes although I recognize, as plaintiff has

2    argued, or acknowledged, there are good days and bad days and

3    this is reflected as well in the treatment notes.  And

4    Dr. Slowik of course has programmatic expertise.

5            When it comes to Therapist Wetherbee and her

6    opinions, her treatment notes detail subjective findings, but

7    as the Second Circuit noted in *Stacey v. Commissioner of*

8    *Social Security*, 799 F.App'x 7, it appears that -- that

9    the -- from 2020, Second Circuit, it is important,

10   particularly in cases involving such things as headaches and

11   mental conditions, the subjective -- the patient's subjective

12   description of his or her symptoms as applied based on the

13   expertise of the examiner is an important consideration.  The

14   activities of daily living, I've already talked about why in

15   the court's view maybe they do not necessarily translate well

16   into a basis to reject the opinions concerning attendance.  I

17   note that the opinions about attendance are well supported by

18   various things, including but not limited to canceled

19   appointments and missed appointments that plaintiff has had

20   which support the notion that on occasion she is fearful of

21   going out in public, particularly given her excoriations.

22           And it's also important to note that in mental

23   health cases, often conditions are cyclical or fluctuating

24   and so cherrypicking good notes and overlooking the times

25   when plaintiff appears with severe anxiety is inappropriate.

1    *Flynn v. Commissioner of Social Security*, 729 F.App'x 119

2    from the Second Circuit Court of Appeals 2018.  When you

3    apply the 1527(c) factors to Therapist Wetherbee's opinions,

4    you find there is a long-standing treatment relationship,

5    unlike Dr. Dura, for example, or the Physician's Assistant

6    Aspen D'Angelo.  She has examined plaintiff on many, many

7    occasions.  She explained the basis of her opinions at page

8    631.  Her opinions are consistent with treatment records, and

9    they're consistent with the opinions of Consultative Examiner

10   Dr. Slowik, and even in part Dr. Chapman who did find a

11   moderate limitation in the ability to perform based on a

12   schedule.

13          In my view, the administrative law judge improperly

14   discounted the therapist's opinions.  FNP Dudden appears to

15   be focused on plaintiff's physical limitations and there

16   isn't any basis, and plaintiff has not argued, that the

17   physical impairment that she suffers cause her to be absent

18   or off task other than as it relates to and exacerbates her

19   mental conditions.  And again, if you examine Dr. Chapman

20   utilizing his opinions, or her, utilizing the 1527(c) factors

21   that he did, he or she did not examine the plaintiff, was not

22   a treating source, and that's especially important in a

23   mental health case where a treating source who has seen a

24   plaintiff over a longitudinal period has a better

25   understanding of the ebbs and flows of his or her condition

1    and the extent of her condition.  And certainly Dr. Chapman

2    did not have available any treatment records after

3    November 2015.  There's really little or no explanation given

4    by Dr. Chapman as to the extent of the limitation on the

5    ability to perform activities within a schedule.

6         I know that one of the cases cited by the

7    plaintiff, and I agree, *Milner v. Berryhill*, 2018 WL 461095

8    from the District of New Mexico, 2018, Magistrate Judge

9    Gregory Fouratt went through an exhaustive analysis of what

10   an agency physician is supposed to do when formulating

11   residual functional capacity after completing a worksheet.

12   The -- Dr. Chapman did not do that in his or her opinion.

13        The -- in conclusion, although I know it's not the

14   court's function to reweigh competing medical source

15   statements, I don't believe there are any competing medical

16   source statements.  I believe that the administrative law

17   judge erred in concluding that plaintiff is capable of

18   performing work on sustained basis and maintaining regular

19   schedule.  The residual functional capacity finding is flawed

20   and the step five determination, therefore, which hinges on

21   the residual functional capacity finding, is also flawed.

22        I don't find any persuasive proof of disability,

23   and so I'm going to grant judgment on the pleadings to the

24   plaintiff without a directed finding of disability and remand

25   the matter for further careful consideration of the medical

1    evidence in the record.

2              I will also note for the purposes of any

3    contemplated Equal Access to Justice Act application that in

4    the face of such an application, having reviewed this matter

5    carefully, I would find that the government's position in

6    this matter was substantially justified and the government

7    has carried its burden to that effect.  Thank you both for

8    excellent presentations, please stay safe.

9              MS. SMOLLER:  Thank you.

10             MR. GORTON:  Thank you, your Honor.

11                  (Proceedings Adjourned, 2:17 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                         Dated this 17th day of December, 2020.

17

18

19                         /S/ JODI L. HIBBARD
                           _____

20                         JODI L. HIBBARD, RPR, CRR, CSR
                           Official U.S. Court Reporter
21

22

23

24

25